UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

DAMRON LAYCOX                                                                    PLAINTIFF
ADC #551582

V.                              No. 3:21-CV-00008-LPR-JTR

JOE PAGE, III, Warden
Grimes Unit, ADC, *et al.*                                                      DEFENDANTS

**RECOMMENDED DISPOSITION**

The following Recommended Disposition has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I. Introduction**

On January 8, 2021, Plaintiff Damron Laycox ("Laycox"), a prisoner in the Grimes Unit of the Arkansans Division of Corrections ("ADC")[1] filed a *pro se*

---

[1] Laycox has since been transferred to the ADC's East Arkansas Regional Unit. *Doc. 8*. He is serving a six-year sentence for Breaking and Entering and First Degree Criminal Mischief, along

§ 1983 Complaint alleging that, on July 1, 2020, while he was housed in "21 Barracks," he was "severely beaten by several inmates," who then "held [him] captive." *Doc. 2 at 5*. According to Laycox, on July 12, 2020, he was finally able to escape and contact a correctional officer. *Id.*

Laycox alleges that, at the time he was beaten and taken hostage by fellow inmates, only a single guard was tasked with watching four barracks of prisoners because the second guard was distracted by logging other inmates in and out of work. *Doc. 2 at 5*. Laycox asserts failure to protect claims against Defendants Warden Joe Page, III ("Page"), Assistant Warden Kenny Davis ("Davis"), Chief of Security Lewis Young ("Young"), and ADC Director Dexter Payne ("Payne") (collectively "Defendants"). *Id.* Laycox also alleges that he was retaliated against for raising concerns about his safety during a September 1, 2020 classification meeting.[2] *Id. at 6–7.*

---

with a four-year sentence on drug convictions. *See* ADC INMATE SEARCH, https://apps.ark.org/inmate_info/search.php (last visited July 13, 2022).

[2] After screening Laycox's Complaint, the Court construed his retaliation claim as follows: "Laycox…claims the Defendants retaliated against him after he filed grievances about the [July 1, 2020] assault, by ordering him to return to general population housing, despite Laycox repeatedly informing them that he feared for his safety if placed back in general housing." *Doc. 14 at 2*.
After review of the Complaint, it is clear that Laycox claims that the retaliation began after he refused to move from segregation to general population and "state[d] in front of the whole classification committee I fear for my life." *Doc. 2 at 6–7*. He claims the Defendants retaliated by "falsifying disciplinaries." *Id. at 7*.
This reading of the Complaint is further supported by the fact that Laycox did *not* file *any* grievances about the July 1, 2020 assault or being taken hostage. *See* Section II.B.1, *infra*.

On January 6, 2022, Defendants filed a Motion for Summary Judgment, Brief in Support, and Statement of Undisputed Material Facts, arguing that, *before* initiating this action, Laycox failed to fully and properly exhaust his administrative remedies on either of the claims he is asserting against them in this action. *Docs. 23, 24, & 25*. In support of their Motion, Defendants have attached the sworn Declaration of ADC Inmate Grievance Supervisor Terri Grigsby-Brown ("Grigsby-Brown") (*Doc. 23-1*); a copy of ADC Administrative Directive 19-34 ("AD 19-34") (*Doc. 23-2*); and the only two relevant grievances filed by Laycox, GR-20-00662 (*Doc. 23-4*) and GR-20-00680 (*Doc. 23-5*).[3]

On January 10, 2022, the Court entered an Order advising Laycox of his right to file a Response to the Motion. *Doc. 26*. This Order also advised Laycox of his right to contest the facts set forth in Defendants' Statement of Undisputed Facts:

> [P]ursuant to Local Rule 56.1, Plaintiff must file a separate "short and concise statement of material facts as to which he contends a genuine issue exists to be tried." Plaintiff's "Statement of Disputed Facts" must state whether he "agrees" or "disagrees" with the factual statements in *each* of the numbered paragraphs in Defendants' Statement of Undisputed Facts (*Doc. 25*). **If Plaintiff disagrees with**

---

[3] Laycox submitted two unrelated grievances in the months before the alleged July 1, 2020 attack. One of those grievances related to issues involving his usage of the law library (GR-20-00378) and the other related to issues with the mail (GR-20-00371). *See Doc. 23-1 at 5; Doc. 23-3 at 2*.

The additional grievances Laycox attaches to his Complaint, which were submitted in September and October of 2020, also do not address Laycox's failure to protect or retaliation claims: GR-20-00712 (legal mail), GR-20-00714 (cleanliness of cells), GR-20-00731 (bedding/clothing issues), GR-20-00750 (law library), and GR-20-00774 (kitchen issues). *Doc. 2 at 23–46*.

**any of the facts in Defendants' Statement of Undisputed Facts, he must: (1) identify each numbered paragraph that contains the facts he disputes; (2) for each paragraph, explain why he disputes those facts; and (3) include a citation to the evidence he is relying on to support his version of the disputed fact.**

*Doc. 26 at 1-2* (emphasis in original).

Laycox did not file a Response to the Motion or a Statement of Disputed Facts and the time to do so has long since passed. Thus, all facts alleged by Defendants in their Statement of Undisputed Facts (*Doc. 26*) are now deemed admitted. Local Rule 56.1(c).[4]

## II.  Discussion

### A. To Fully and Properly Exhaust His Administrative Remedies, Laycox Was Obligated to Comply with the ADC's Policies, Directives and Rules Governing Exhaustion

---

[4] Local Rule 56.1, entitled "Summary Judgment Motion," provides, in relevant part:

In addition to the requirements set forth in Local Rule 7.2, the following requirements shall apply in the case of motions for summary judgment.

(a) Any party moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, shall annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine dispute to be tried.

(b) If the non-moving party opposes the motion, it shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried.

(c) All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) *shall be deemed admitted unless controverted by the statement filed by the non-moving party* under paragraph (b). (Emphasis added).

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 88–91 (2006).

The PLRA also requires prisoners to: (1) *fully and properly* exhaust their available administrative remedies *as to each claim* in the complaint; and (2) complete the exhaustion process *before* filing an action in federal court. *Jones,* 549 U.S. at 211, 219–20, 223–24; *Woodford,* 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136, 1141-42 (8th Cir. 2014); *Johnson v. Jones,* 340 F.3d 624, 626–28 (8th Cir. 2003). Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses

the issues on the merits"). Thus, to satisfy the PLRA, Laycox must comply with the ADC's exhaustion requirements before he can properly bring those claims in a § 1983 action.

The relevant ADC directives and regulations governing exhaustion require that, in connection with each claim, a prisoner must, among other things: (1) "specifically name each individual involved;" (2) state only one problem or issue per grievance; and (3) include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] personnel involved or witnesses." *See* ADC Adm. Dir. ("AD") 19-34, § IV(C)(4), (D)(2), & (E)(2). The grievance forms themselves also contain these instructions to ensure prisoners are aware of them. *Id*. at Att. 1 ("Briefly state your one complaint/concern and be specific as to the complaint, date, place, name of personnel involved and how you were affected."). If an ADC inmate wishes to grieve more than one issue, he or she "must use a separate [grievance] form for each issue[, as] [o]nly one issue will be addressed in the response to a grievance." *Id.* at § IV(D)(2). Any [a]dditional problems/issues contained in the grievance will not be addressed and will not be considered as exhausted." *Id*. Finally, the ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies *as to all defendants at all levels of the grievance procedure … their lawsuits or claims may be dismissed immediately*" under the PLRA. *Id.* at § IV(N) (emphasis added); *see also Id.* at §

IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance *before* filing a lawsuit).

Thus, with respect to both his failure to protect claim and his retaliation claim, Laycox was required to file: (1) a separate "Step One" informal resolution on each claim, which named or otherwise identified each Defendant, and which was required to be submitted within fifteen days after the incident; (2) a separate "Step Two" grievance on each claim which was required to be submitted to the Warden within three working days of the denial of the informal resolutions for each of his claims; and (3) a separate "Step Three" appeal on each claim to the ADC Chief Deputy/Deputy/Assistant Director, which was required to be submitted within five working days after the Warden's Decision on each of the Step Two grievances. *Id*. at §§ IV(D)-(G).

> **B. The Undisputed Facts Establish That Laycox Did Not Fully and Properly Exhaust His Administrative Remedies On Either of the Claims He Has Asserted Against Defendants**
>
> **1. Laycox's Failure to Protect Claim**

In his Complaint, Laycox claims that Defendants failed to protect him from being attacked on July 1, 2020 by providing inadequate staffing to prevent the attack. *Doc. 2 at 5*. ADC Inmate Grievance Procedures required Laycox to file an informal resolution raising this failure to protect complaint against Defendants no later than fifteen days after July 12, 2020—the date Laycox alleges he was able to escape

captivity from his fellow inmates. AD 19-34 at § IV(E)(1) (requiring inmates to submit a Step One informal resolution within fifteen days after the occurrence of an incident).

In her sworn Declaration, Grigsby-Brown states that she reviewed Laycox's grievance file and "[t]here are *no* grievances related to Laycox's failure to protect claim." *Doc. 23-1 at 4* (emphasis added). Further, according to Grigsby-Brown and Defendants' Statement of Undisputed Facts, the first informal resolution Laycox submitted, in connection with the July 12 incident, was on September 1, 2020. *Docs. 23-1 at 4*; *Doc. 23-4 at 4*; *Doc. 25 at 4*. That informal resolution, which later became grievance GR-20-00662, complains about comments allegedly made by Defendant Page during a September 1, 2020 classification meeting concerning Laycox's cell assignment. *Doc. 23-4 at 4.*[5] Specifically, Laycox alleged in that grievance that

---

[5] In Laycox's September 1, 2020 Step One informal resolution, which at Step Two became GR-20-00662, he stated the following:

> Today during classification at approximately 9:19am, Warden Page stated to me he did not care about my situation occurring in 21 Barracks on 7/12/20 that also he does not care that I fear for my life. This is a total disregard to protection/safety for inmates protocol. This is the second time in classification that I have stated in front of numerous witnesses that I fear for my life. Still with no one taking heed to my situation. My life is in serious jeopardy if I was to return to population as the Warden is requesting after the fact of me telling him I will be stabbed if I do so. So this grievance is being written due to the fact of the disregard to inmate safety and the professional conduct being neglected by Warden Joe Page and I fear for retaliation and repricution [sic] from this grievance due to the fact this is on the warden. I am in no way grieving a disciplinary matter! I fear for my life and well being inside grimes unit, or any unit for this matter.

*Doc. 23-4 at 4.*

"Warden Page stated…that he did not care about my situation occurring in 21 Barracks on 7/12/20." *Id.*

Laycox filed a similar informal resolution on September 8, 2020, which later became grievance GR-20-00680. In those papers, Laycox complains that during a September 8, 2020 classification meeting, "while discussing…an altercation that happened on 7-12-2020 and the reason I fear for my life," Defendant Page again made comments indicating he did not care about Laycox's safety.[6] *Doc. 23-5 at 4*.

Importantly, *nothing* in those grievance papers complains about Page or any of the other Defendants providing "inadequate staffing" that lead to Laycox being beaten and held hostage on July 1, 2020. Rather, the Informal Resolutions make a passing reference to "my situation occurring in 21 Barracks on 7/12/2020," and "my

---

[6] In Laycox's September 8, 2020 Step One informal resolution, which at Step Two became GR-20-00680, he stated the following:

> During classification today while discussing my situation involving an altercation that happened on 7-12-0220 and the reason I fear for my life, I got to ask Warden Page if he has done an investigation on the situation and that I fear for my life. At that moment in front of all staff in classification on the committee, he took his face mask/PPE off and stated "Does it look like I care about your life?! I was immediately taken aback by these actions/statement that the audacity of a warden to an inmate in such an unprofessional manner and to endanger my health in such a way by taking his PPE/face mask off. This is a vital concern not only for my safety but to all others at this unit staff and inmates alike. I wish for Joe Page to be put on the computerized voice stress analysis exam as wee as the classification committee due to the recent events because there is no doubt Warden Page will deny these allegations. I fear for my life and fear retaliation from this grievance and ask to be separated from Warden Joe Page because of his previous statement in classification.

*Doc. 23-5 at 4.*

situation involving an altercation…on 7-12-2020." Nothing in those two documents comes close to providing notice that Laycox is asserting a failure to protect claim against the Defendants based on their providing inadequate staffing on July 1.

Laycox grieved that Page's decision to return him to general population disregarded inmate safety. He did *not* grieve any failure to protect claim related to the July 2020 incident. Further, even if Laycox did adequately raise a failure to protect claim in GR-20-00662 or GR-20-00680, Laycox submitted the first of those informal resolutions nearly two months after the alleged July 2020 incident, not within fifteen days as required by AD 19-34. Finally, neither grievance names Defendants Davis, Young, or Payne, or make any complaints about their conduct or actions. *Doc. 25 at 5, ¶¶ 21, 23*.

Grigsby-Brown's Declaration makes it clear Laycox never submitted a grievance raising complaints about being beaten on July 1 and then held hostage for twelve days. Thus, Laycox failed to fully and properly exhaust his administrative remedies on the failure to protect claim he has now asserted against Defendants in this action. *See* AD 19-34 at § IV(E)(1). Accordingly, Defendants' Motion for Summary Judgment should be granted on Laycox's failure to protect claim.

### 2. Laycox's Retaliation Claim

In his Complaint, Laycox alleges that, during a September 1, 2020 classification meeting, Defendant Page ordered him to be returned to general

population. *Doc. 2 at 6*. Laycox states that, during the meeting, he informed Page and the rest of the classification committee that he feared for his life if he was returned to general population, but "Page stated he did not care about my situation that occurred in 21 barracks on 7-12-20 and also does not care that I fear for my life." *Id. at 6-7*.

Laycox alleges these statements by Page were "the crux of where the retaliation started" and he asked Defendants Davis and Young "to speak up about [his] situation," but neither offered him any assistance. *Id. at 7*. Laycox further alleges that he "wrote several grievances explaining what happened at classification," and also "wrote letters to [Defendant] Payne, who failed to correct the retaliation." *Id*.

In her sworn Declaration, Grigsby-Brown states that Laycox filed two grievances in September 2020 that mentioned his fear of possible retaliation—GR-20-00662 (*Doc. 23-4*) and GR-20-00680 (*Doc. 23-5*). *Doc. 23-1 at 5, ¶ 22*.; *Doc. 25 at 4, ¶ 19*.

    **a. Grievance GR-20-00662**

In this Grievance, Laycox complained that Defendant Page "stated to me [during the September 1 classification meeting] he did not care about my situation occurring in 21 barracks on 7/12/20, that also he does not care that I fear for my life." *Doc. 23-4*; *Doc. 25 at 4*. Laycox further stated that Page is disregarding inmate

11

safety because "my life is in serious jeopardy if I was to return to population as the Warden is requesting." *Id*. This grievance does not mention Davis, Young, or Payne, or otherwise makes any allegations against them. *Doc. 25 at 5, ¶ 21*.

Viewing Laycox's Step One Informal Resolution giving rise to GR-20-00662 in a light most favorable to him, he makes it clear that: (1) he disagrees with Warden Page's decision to return him to general population; (2) he fears, after he is returned to general population, that he may be seriously injured or killed; and (3) he fears, after having initiated the grievance process raising this complaint, Warden Page may retaliate against him.[7]

*At most*, Laycox is raising an *anticipatory complaint* that he fears Warden Page *may* retaliate against him for using the grievance process to complain about Page's decision to return him to general population. Because no retaliation had occurred when Laycox submitted the Step One informal resolution, there was *no* "incident of retaliation" to support a grievable matter. *See* AD 19-34 at § IV(E)(1) (requiring an inmate to submit a Step One informal resolution "within 15 days *after* the occurrence of the incident.") (emphasis added).

---

[7] Later in GR-20-00662, Laycox provided a similarly vague description of his concerns about his safety in general population and the *potential retaliation* he may be subjected to from Warden Page for raising a complaint against him: "[T]his grievance is being written due to the fact of the disregard to inmate safety and professional conduct being neglected by Warden Joe Page and I fear for retaliation and [repercussion] from this grievance due to the fact this is on the warden." *Doc. 23-4*.

### b. Grievance GR-20-00680

In Grievance GR-20-00680, Laycox makes allegations similar to those in GR-20-00662. The only new allegation is that, during the classification committee meeting, Page stated: "Does it look like I care about your life?!" *Doc. 25 at 4*; *Doc. 23-5 at 4*. Importantly, GR-20-00680 does *not* grieve an actual incident of retaliation. Instead, Laycox makes it clear he "fear[s] retaliation from this grievance." *Doc. 23-5 at 4*. Finally, GR-20-00680 does not name Defendants Davis, Young, or Payne, nor does it make any allegations against them. *Id.*; *Doc. 25 at 5*.

In GR-20-00662 and GR-20-00680, Laycox does not allege an incident of actual retaliation by any of the Defendants. Rather, Laycox merely expresses his concern that Warden Page may engage in *future retaliation* against him. Thus, Laycox cannot rely on either of those grievances to support his position that he fully and properly exhausted a claim of retaliation against any of the Defendants. *See* AD 19-34 at §IV(E)(1) (requiring an inmate to submit a Step One informal resolution "within 15 days *after the occurrence of the incident*.") (emphasis added).

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendants' Motion for Summary Judgment on the issue of exhaustion (*Doc. 23*) be GRANTED, and Laycox's Complaint be DISMISSED, WITHOUT PREJUDICE.

DATED this 15th day of July, 2022.

                                                                /s/ J. Thomas Ray
                                         UNITED STATES MAGISTRATE JUDGE